# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

## 11-892

STATE OF LOUISIANA

VERSUS

MICHAEL D. PATTERSON

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 89656
HONORABLE J. CHRISTOPHER PETERS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JAMES T. GENOVESE
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Billy Howard Ezell, and James T. Genovese, Judges.

CONVICTIONS AFFIRMED, SENTENCES AFFIRMED
AS AMENDED, REMANDED WITH INSTRUCTIONS.

Annette Roach
Louisiana Appellate Project
Post Office Box 1747
Lake Charles, Louisiana 70602-1747
(337) 436-2900
COUNSEL FOR DEFENDANT/APPELLANT:
    Michael D. Patterson


J. Reed Walters
District Attorney – Twenty-Eighth Judicial District
Post Office Box 1940
Jena, Louisiana 71342
(318) 992-8282
COUNSEL FOR APPELLEE:
    State of Louisiana

**GENOVESE, Judge.**

In this criminal case, Defendant, Michael D. Patterson, was convicted of five counts of distribution of methamphetamine and sentenced to five years at hard labor on each count to run consecutively to each other. He appeals his convictions and sentences, alleging insufficiency of the evidence, trial court error in denying his motions for new trial, trial court error in allowing evidence of other crimes/bad acts, and excessive sentence. For the following reasons, we affirm Defendant's convictions, we affirm Defendant's sentences as amended, and we remand with instructions to amend the minutes.

## FACTS AND PROCEDURAL HISTORY

Samantha Jones was married to Defendant's cousin before she was caught selling methamphetamine to an Alcohol, Tobacco, and Firearms agent and charged with two counts of distribution of methamphetamine. Trooper Charles Turnage of the Louisiana State Police asked Jones "if she would be willing to cooperate with law enforcement and provide to [them] who her source was." In exchange for her cooperation, Trooper Turnage "would speak to [the district attorney's office] on her behalf." As a result of that agreement, Jones served as a confidential informant in Operation Third Option, an undercover operation in LaSalle Parish.

Operation Third Option began in the latter part of 2007 and concluded around July of 2009. On five different occasions as part of that operation, Jones met with authorities before making drug purchases from Defendant.[1] She began with a telephone call to Defendant to arrange for each purchase. Her person and her vehicle were searched to insure she took no illegal substances or weapons into the operation. On the first two occasions, March 10 and March 16, 2009, Jones

---

[1] The purchases were made from Defendant on March 10, 2009, March 16, 2009, March 24, 2009, April 8, 2009, and July 6, 2009.

was equipped with an audio device. The police "got good audio" on the first buy, but the equipment failed on the second buy. On the third occasion, March 24, 2009, authorities had video but no audio. On the final two buys, they had both audio and video. Recordings from the buys on March 10, March 24, and July 6, 2009, were introduced into evidence at trial and played to the jury.[2]

Jones testified that the tapes showed accurate representations of what occurred during each buy. During the first four buys, she "would tell [Defendant] what [s]he wanted[,] and he'd go around behind the house and then he'd come back with it." For the last buy, she went inside his house. Each time, she took her methamphetamine purchase back to Trooper Turnage and Robert Terral, the chief narcotics officer of the LaSalle Parish Sheriff's Office. Four of the transactions were for three hundred dollars each, and one transaction was for one hundred dollars. Several defendants were involved in the operation. Each substance Jones purchased from Defendant was subjected to laboratory analysis and identified as methamphetamine as per the testimony at trial of Alex King of the North Louisiana Crime Lab. Jones stated that she worked with Trooper Turnage and Officer Terral "[t]o try to get help with [her] charges."

Defendant was tried and convicted by a jury of five counts of distribution of methamphetamine on January 26, 2011. He was originally sentenced on March 1, 2011, to five years at hard labor on each count, with the first two years of each sentence to be served without benefit of parole, probation, or suspension of sentence, and with the sentences to run consecutively. However, at the hearing on Defendant's motion for reconsideration of his sentence on April 13, 2011, the trial court amended his sentences to five years at hard labor on each count, with the

---

[2] The trial court ruled that the April 8, 2009 video was not "an accurate representation of what went on because of the way the voice went with the video" and sustained Defendant's objection to its admission into evidence.

sentences to run consecutively. Defendant now appeals his convictions and sentences.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. After reviewing the record, we find one error patent.

During the sentencing proceeding, the trial court ordered Defendant to participate in and complete a GED program at the institution where he is to be housed. For distribution of methamphetamine, La.R.S. 40:967 carries a sentence of imprisonment at hard labor for not less than two nor more than thirty years and a potential fine of not more than fifty thousand dollars. The statute does not provide for completion of a GED program as part of the penalty. Additionally, we know of no statute or jurisprudence authorizing the imposition of such a condition when the defendant is not placed on probation. However, this court addressed a similar issue in *State v. Webre*, 09-351, p. 8 (La.App. 3 Cir. 11/4/09), 21 So.3d 1154, 1159:

> In *State v. Gregrich*, 99-178 (La.App. 3 Cir. 10/13/99), 745 So.2d 694, this court vacated, as an error patent, the portion of the defendant's penalty requiring him to participate in a substance abuse program. Whether this condition was imposed as part of his sentence for negligent homicide or his sentence for driving while intoxicated was not clear. Nevertheless, the court observed that "[n]either statute allows the trial court to require participation in a substance abuse program, absent part of the sentence being subject to probation requirements." *Id*. at 696. Because *Gregrich* was not placed on probation, this court held that the trial court's order to attend substance abuse evaluations was illegal. *Id*.
>
> Here, the trial court ordered Defendant to undergo drug treatment if the Department of Corrections could accommodate him. The court did not suspend Defendant's sentence, nor was he placed on probation. Thus, as in *Gregrich*, the court's order to undergo drug treatment without placing Defendant on probation was illegal.
>
> This court also noted in *Gregrich* that, under La.Code Crim.P. art. 882(A), an illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review,

"when such correction does not involve the exercise of sentencing discretion," quoting *State v. Fraser*, 484 So.2d 122 (La.1986). Accordingly, we amend the sentence imposed by the trial court to delete that portion requiring participation in drug treatment.

We find that the portion of the sentence requiring Defendant to participate in and complete a GED program is illegal. Accordingly, we amend the sentence imposed by the trial court to delete the portion requiring participation in and completion of a GED program. Additionally, we instruct the trial court to make an entry in the minutes reflecting this amendment.

## ASSIGNMENTS OF ERROR

The Defendant assigns the following five errors:

### I.

The evidence introduced at the trial of this case, when viewed under the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard, was insufficient to prove beyond a reasonable doubt that Michael Patterson distributed methamphetamine to Samantha Jones on five separate occasions in 2009.

### II.

The trial court erred in denying the two requested motions for mistrial. As a result, Appellant was denied a fair trial as guaranteed to him by both the Sixth Amendment to the United States Constitution and [La.Const. art. 1], § 16.

### III.

The trial court erred in denying the Motion for New Trial and in assuring that Appellant received a fair trial as guaranteed to him by both the Sixth Amendment of the United States Constitution and [La.Const. art. 1], § 16.

### IV.

The trial court erred in permitting the State to question Trooper Turnage and Robert Terral concerning "Operation Third Option" aka "Operation Option Three" as this reference not only permitted evidence of other crimes/bad acts by others, it improperly linked Appellant to the investigation of criminal activity. This testimony deprived Appellant of a fair trial as guaranteed by both the Sixth Amendment of the United States Constitution and [La.Const. art. 1], § 16.

4

## V.

The trial court failed to sufficiently consider and weigh the factors set forth in [La.Code Crim.P.] art. 894.1, resulting in the imposition of sentences which violate the Eighth Amendment of the Constitution of the United States and [La.Const. art. 1], § 20, as they are nothing more than cruel and unusual punishment and, thus, excessive.

## ASSIGNMENT OF ERROR NUMBER ONE

Defendant contends the evidence was insufficient to convict him of distribution of methamphetamine. The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson*, 443 U.S. 307 (1979); *State v. Captville*, 448 So.2d 676 (La.1984)). The *Jackson* standard of review is now legislatively embodied in La.Code Crim.P. art. 821. It does not allow the appellate court "to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521 (citing *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165). The appellate court's function is not to assess the credibility of witnesses or reweigh the evidence. *See State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

The factfinder's role is to weigh the credibility of witnesses. *See State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. Thus, other than insuring the sufficiency evaluation standard of *Jackson*, "the appellate court should not second-guess the credibility determination of the trier of fact," but rather, it should defer to the rational credibility and evidentiary determinations of the jury. *Id.* at

5

1270 (quoting *State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27).  Our supreme court has stated:

> However, an appellate court may impinge on the fact finder's discretion and its role in determining the credibility of witnesses "only to the extent necessary to guarantee the fundamental due process of law." *State v. Mussall,* 523 So.2d 1305, 1310 (La.1988).  In determining the sufficiency of the evidence supporting a conviction, an appellate court must preserve " 'the factfinder's role as weigher of the evidence' by reviewing 'all of the evidence . . . in the light most favorable to the prosecution.'" *McDaniel v. Brown,* 558 U.S. ----, ----, 130 S.Ct. 665, 674, 175 L.Ed.2d 582 [(2010)](quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).  When so viewed by an appellate court, the relevant question is whether, on the evidence presented at trial, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789.  Applied in cases relying on circumstantial evidence . . . this fundamental principle of review means that when a jury "reasonably rejects the hypothesis of innocence presented by the defendant[ ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." *State v. Captville,* 448 So.2d 676, 680 (La.1984).

*State v. Strother*, 09-2357, pp. 10-11 (La. 10/22/10), 49 So.3d 372, 378.

It is unlawful to knowingly or intentionally distribute methamphetamine, a Schedule II controlled dangerous substance.  *See* La.R.S. 40:964(C) and La.R.S. 40:967(A).  Defendant argues Jones was not a credible witness, and neither Trooper Turnage nor Officer Terral had personal knowledge of a drug deal between Jones and Defendant.

The jury had the opportunity to observe Jones and to evaluate her credibility.  Jones testified that she made arranged purchases of methamphetamine from Defendant on five occasions as discussed earlier herein.  Trooper Turnage and Officer Terral supported her testimony with details about the monitoring of her purchases from Defendant.  This testimony, if true, is sufficient to convict Defendant, and the jury obviously believed that it was.  This assignment of error is without merit.

6

## ASSIGNMENT OF ERROR NUMBER TWO

During the trial, Defendant made two motions for mistrial, and the trial court denied them both. The first motion was based on a comment made by a potential juror who was ultimately placed on the jury.

Defendant claims the issue is not whether this juror was erroneously allowed on the jury, but rather, that his comments during *voir dire* tainted all the other potential jurors who heard those comments. He argues the trial judge should have granted the motion for mistrial under La.Code Crim.P. art. 771 because an admonition was insufficient.[3]

Louisiana Code of Criminal Procedure Article 771 provides the trial court should issue an admonition "to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant . . . ." The admonition pertains to such a remark made "by a witness or person other than the judge, district attorney, or a court official . . . ." La.Code Crim.P. art. 771(2). However, the article also allows the trial judge to grant a defendant's motion for mistrial if he "is satisfied that an admonition is not sufficient to assure the defendant a fair trial."

During *voir dire*, the juror indicated that he knew Defendant, but that he could be fair and impartial. When asked whether there was any "personal, business, family or health reason . . . why [the juror could not] serve as an impartial juror," this juror replied, "[t]he only dealings I had with [Defendant] is just through jail ministries." Defendant made no objection at that time.

---

[3] Defendant's brief erroneously refers to "the admonition article" as La.Code Crim.P. art. 772 instead of La.Code Crim.P. art. 771.

When the State asked the juror how long he had been involved in the jail ministry, the juror indicated "[e]ight years." He then volunteered:

> I was, about a year or so I was inactive, but here recently I've been back in it. But that was my first acquaintance with him, I believe, back in – I was trying to think I met him back, in, I believe. I'm pretty sure I've got the right person. Pretty sure.

At that point, defense counsel asked for a mistrial "because [his] client's never been in jail. Never been in the prison ministry." The State's counsel indicated he "was flabbergasted" at the juror's remark and feared it had infected the jury.

The trial judge recessed court to research the issue and determined a mistrial was not warranted based on La.Code Crim.P. arts. 770, 771, and 775. He then admonished the twelve people in the jury box being examined at the time the remark was made:

> [I]n regards to the comments made by [the juror] in answer to his questions, that, for the record, there's no conclusive information as to whether or not [Defendant] was ever or not incarcerated, for whatever reason, and the fact that he may or may not have ever been incarcerated for anything, whether it be these charges or otherwise, that has no bearing or impact upon the guilt or innocence of [Defendant] in this regard. Therefore, any comments that were made in regards to the possibility, because I don't think it was conclusively shown, they said "maybe" that [the juror] was involved with [Defendant] in a ministry, prison ministry or what have you, should be basically ignored as far as any determination as to the guilt or innocence of [Defendant] in these proceedings.

The juror was further questioned about his thoughts that he might know Defendant from his prison ministry:

> I'm, [sic] this is where I was at when I made that statement. There was [sic] people sitting here[,] and they was [sic] asking how they knew him[,] and in my mind, I'm sitting here thinking: I'm pretty sure I met [Defendant]. It might not have been him, but in my mind, I'm sitting here thinking, that's the only acquaintance other than, I've seen him[.] I've seen [Defendant] in Wal-Mart, you know. But my first account [sic] was not at Wal-Mart, I'm – at the end of the day, if the man's never spent one night in jail, I'm a wrong man.
>
> . . . .

8

If he's ever spent one night, I'm pretty sure I met him.

. . . .

If he's never been in jail, I didn't meet him there.

Defense counsel challenged this juror for cause, but the trial judge denied the request. Defendant did not exercise a peremptory challenge on this juror, and he was ultimately placed on the jury. Defendant did not use all of his peremptory challenges.

Admonition is the preferred remedy over mistrial, and the trial court's decision to deny a motion for mistrial and admonish the jury will not be disturbed absent an abuse of discretion. *See State v. Willis*, 05-218 (La.App. 3 Cir. 11/2/05), 915 So.2d 365, *writ denied,* 06-186 (La. 6/23/06), 930 So.2d 973, *cert. denied*, 549 U.S. 1052, 127 S.Ct. 668 (2006) (citing *State v. Narcisse,* 426 So.2d 118 (La.1983), *cert. denied,* 464 U.S. 865, 104 S.Ct. 202 (1983) and *State v. Givens,* 99-3518 (La. 1/17/01), 776 So.2d 443). Even if the motion for mistrial was erroneously denied, this court should review the matter under a harmless error analysis. *See State v. Knight*, 45,231 (La.App. 2 Cir. 5/19/10), 36 So.3d 1163, *writ denied,* 10-1425 (La. 1/14/11), 52 So.3d 899 (citing *State v. Johnson,* 94-1379 (La. 11/27/95), 664 So.2d 94).

We find the evidence was sufficient to convict Defendant of five counts of distribution of methamphetamine without the comments about Defendant's possible prior incarceration. Thus, we find the denial of the motion for mistrial on the basis of the juror's comments is, if any error at all, a harmless one that did not affect the outcome of the trial. "Trial error is harmless where the verdict rendered is 'surely unattributable to the error.'" *Knight*, 36 So.3d at 1172 (quoting *Johnson*, 644 So.2d at 102).

9

Defendant's second motion for mistrial was based on defense counsel's observation of two jurors who appeared to be asleep. Counsel remarked to the trial judge, "[T]he other thing I want to point out to the [c]ourt, I guess I probably should make a mistrial motion on it, though, is the juror in the seat here in this corner . . . [t]hen the one over here in the back . . . I think [they] were sleeping during the . . . ." The trial judge indicated he had not noticed this, and defense counsel responded, "[b]ut I need to let you know and make a motion anyway."

The trial judge never ruled on this motion. Defense counsel never asked for a ruling or objected to the lack of a ruling on the motion. However, because the trial progressed, we find that the trial court impliedly denied the motion for mistrial. *See State v. Johnson*, 05-180 (La.App. 5 Cir. 11/25/09), 917 So.2d 576, *writ denied*, 06-1254 (La. 12/15/06), 944 So.2d 1282.

The fact that a juror may "briefly doze off" does not necessarily require a mistrial. *State v. Cass*, 356 So.2d 396, 398 (La.1977). Here, it is impossible to determine whether either of the jurors to whom Defendant referred was impaired, or if either was impaired at all. The record shows simply that defense counsel thought two jurors were asleep. He submitted no evidence beyond his one comment to support his objection, and he never asked for a ruling or for argument on his motion. Consequently, this argument is without merit.

**ASSIGNMENT OF ERROR NUMBER THREE**

Defendant contends he is entitled to a new trial because the trial judge's comments on the evidence on two occasions during trial prohibited him from receiving a fair trial. Defense counsel objected during the State's closing argument, contending the State misstated some of the evidence. The State's attorney commented, "I don't recall [witness Samantha Jones] saying she got arrested in Baton Rouge. In fact, I recall her saying, [']No, I wasn't. They talked

to me, but I wasn't arrested.[']" When defense counsel objected on grounds "that's in Officer's [sic] Turnage's report," the trial judge commented:

> It may be in Officer Turnage's report, but that's exactly what Ms. Jones said. But if there's other, if there's other evidence to [sic] that type[,] you've brought it out, but as far what, the recitation of what Ms. Jones said, that's what she said because I remember that specifically from my notes.

Defense counsel again noted his objection.

A trial judge "shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted." La.Code Crim.P. art. 772. The purpose of this rule is:

> to safeguard the role of the jury as the sole judge of the facts on the issue of guilt or innocence. *State v. Hodgeson,* 305 So.2d 421 (La.1974). Thus, if the effect of a comment is to permit a reasonable inference that it expresses or implies the judge's opinion as to the defendant's innocence or guilt, this constitutes a violation of the defendant's statutory right to no-comment and thus requires reversal. *State v. Green,* 231 La. 1058, 93 So.2d 657 (1957). To constitute reversible error, however, the effect of the improper comment must be such as to have influenced the jury and contributed to the verdict. *State v. Johnson,* 438 So.2d 1091 (La.1983).

*State v. Grainer*, 02-703, p. 16 (La.App. 4 Cir. 12/4/02), 834 So.2d 555, 565-66, *writ denied,* 03-152 (La. 10/10/03), 855 So.2d 325.

Here, the trial judge's comments referred to Jones' testimony about whether she had been arrested in Baton Rouge, an issue not related to Defendant's guilt or innocence. Defendant argues the trial judge's comments implied he "had resolved Ms. Jones' credibility favorably." While the trial judge may have repeated a portion of Jones' testimony, he made no comment about whether the testimony he recalled was true, only that this was what he recalled the testimony to be. Thus, we find the trial judge's comments, while perhaps out of sync with La.Code Crim.P.

11

art. 772, were not of a nature that influenced the jury, contributed to the verdict, or had any effect on the ultimate issue of Defendant's guilt.

In a second instance, the State sought to introduce video evidence of Jones's April 8, 2009 methamphetamine purchase from Defendant. Defendant objected on grounds the video did not "show his actual image or his voice identification." The trial judge then commented and instructed the jury:

> The only problem I have with [the video] is, is I'm not sure it's an accurate representation because the stupid video doesn't look like it was actually running. It was messed up on [sic]. I don't think that this regards Ms. Jones' testimony previously, however, I don't think that that video is an accurate representation of what went on because of the way the voice went with the video. I'm going to sustain the objection as to the video only. However, you're not supposed to disregard any testimony that Ms. Jones has rendered in regards to the – what day was this – the April 8, 2009[] alleged purchase.

Again, defense counsel noted his objection. Defendant argues the instruction to the jury to not disregard Jones' testimony calls for a new trial.

We find that this instruction was not a "comment upon the facts of the case" as defined by La.Code Crim.P. art. 772. While the trial judge instructed the jury to not disregard Jones's testimony, he did not instruct the jury to regard her testimony as true. Likewise, his remarks did not concern the guilt, *vel non*, of Defendant. *See State v. Colligan*, 95-880 (La.App. 3 Cir. 8/7/96), 679 So.2d 184. Further, the trial judge instructed the jury members immediately prior to deliberation that they were "the judges of the facts on the question of the guilt or innocence of the accused." We find that the trial judge did not imply or suggest any opinion about Jones's credibility, but simply instructed the jury to consider her testimony about the April 8, 2009 purchase. This assignment of error is without merit.

**ASSIGNMENT OF ERROR NUMBER FOUR**

Defendant contends the reference by Trooper Turnage and Officer Terral to Operation Third Option, the undercover drug investigation, improperly allowed

12

evidence of other crimes to be admitted against him. No objection was made during Officer Terral's testimony about the investigation. Thus, this court may not consider this argument as it pertains to him. *See* La.Code Crim.P. art. 841.

Trooper Turnage, called as the State's witness, identified himself as the lead case agent in Operation Third Option and testified about other law enforcement agencies involved. Then he was asked, "[b]riefly tell us what took place in terms of the organizational operation, so to speak, of Operation Third Option." At that point, defense counsel made his only objection during this line of questioning. Questioning about the operation continued, and Trooper Turnage testified Defendant and Jones were both involved in the operation. Again, no further objection was made. Accordingly, we find this court may only consider whether the single request to tell "what took place in terms of the organizational operation" improperly referenced other crimes. La.Code Crim.P. art. 841.

The fifth circuit addressed a similar issue in *State v. Dee*, 09-712 (La.App. 5 Cir. 2/23/10), 34 So.3d 892, *writ denied,* 10-705 (La. 10/29/10), 48 So.3d 1097. In *Dee*, a detective testified he was participating in a narcotics investigation at a motel, and the defendant was a target in the investigation. The detective confirmed his sole purpose in being at the motel was the defendant, who complained on appeal that this testimony improperly referred to other crimes evidence "because it led the jury to believe that he was a career drug dealer." *Id.* at 902. The fifth circuit determined the challenged testimony was not evidence of other crimes and did not imply the defendant had committed other crimes in the past. "Rather it simply describe[d] information regarding the matter defendant was currently on trial for." *Id*.

Likewise, we find that a description of the "organizational operation" of the investigation here does not constitute evidence of other crimes committed by

13

Defendant. The only question to which Defendant objected made reference only to the organization of the operation, not to Defendant. The trial judge overruled Defendant's objection "because I haven't heard anything about going into any other crimes evidence or anything else. I think this is more of a structural aspect about how it was determined." We find the trial judge was correct in his reasoning. Nothing at that point of the questioning referred to other crimes evidence. Objection to any further testimony was not preserved for appellate purposes. *See* La.Code Crim.P. art. 841. This assignment of error lacks merit.

**ASSIGNMENT OF ERROR NUMBER FIVE**

Defendant argues the trial court inadequately considered the factors of La.Code Crim.P. art. 894.1 and imposed an excessive sentence. This court has set out a standard to be used in reviewing excessive sentence claims:

> [Louisiana Constitution Article 1], § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

To decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has held:

14

[An] appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

Applying the *Smith* factors, the trial judge reviewed the factors of La.Code Crim.P. art 894.1 and noted Defendant was "generous with [his] time and generous with [his] money for youth activities in [the] community." He was "a first time felony offender," but he was convicted on five counts. Defendant's pre-sentencing report indicated a prior misdemeanor conviction for carrying a weapon as a student on school property many years prior. He was "with the same woman for over [seventeen] years" and had three children—ages sixteen, thirteen, and four at the time of sentencing. His youngest child has Downs Syndrome. However, the trial judge noted he had no evidence of the extent to which Defendant's family relied on him for support. And, even though Defendant expressed the desire to "finish raising [his] kids," he provided a poor role model by distributing drugs.

The trial judge considered Defendant to be "a member of productive society if [he] should so choose," since he had operated a local car wash for approximately eleven years. However, the trial judge also noted Defendant "did not make one mistake," he made five mistakes over a four-to-five-month time period. As the crimes were drug crimes, the trial judge did not consider Defendant's offenses to be "victimless cases." Rather, the trial judge considered distribution of

methamphetamine to be "one of the most reprehensible crimes in our society." Even though Defendant sold methamphetamine only to Jones, and only at her instigation, he did so not knowing whether the drugs were only for her personal use or whether she intended to sell them to others. The trial judge found Defendant's actions to be "a pattern of conduct that must be broken." He believed "a lesser sentence would deprecate the seriousness of the offense[s] charged."

Defendant was exposed to a potential sentence of two to thirty years at hard labor and a fifty thousand dollar fine on each of the five counts. *See* La.R.S. 40:967(B). Thus, his sentence of five years at hard labor on each count falls in the lower range of sentencing. However, the trial judge ordered the sentences to be served consecutively so that Defendant's sentences total twenty-five years at hard labor. Nevertheless, his sentencing exposure was one hundred and fifty years.

Sentences for multiple offenses "constituting parts of a common scheme or plan . . . shall be served concurrently unless the court expressly directs that some or all be served consecutively." La.Code Crim.P. art. 883. The trial judge determined Defendant's five offenses constituted a pattern or lifestyle. He expressly directed the five terms to run consecutively, satisfying the exception of La.Code Crim.P. art. 883.

> This court has previously held that imposing consecutive sentence[s] for offenses occurring on separate dates and under different circumstances did not constitute an abuse of discretion. *State v. Baker,* 08-54, (La.App. 3 Cir. 5/7/08), 986 So.2d 682. The fifth circuit has held that consecutive sentences are indicated for offenses occurring on different dates and locations. *State v. Wilson,* 99-105, (La.App. 5 Cir. 7/27/99), 742 So.2d 957, *writ denied,* 99-2583 (La.2/11/00), 754 So.2d 935. The fifth circuit has applied this holding to distribution of cocaine occurring on different days. *State v. Dillon,* 01-906, (La.App. 5 Cir. 2/26/02), 812 So.2d 770, *writ denied,* 02-1189 (La.4/21/03), 841 So.2d 779.

*State v. Chaisson,* 09-119, p. 28 (La.App. 3 Cir. 10/7/09), 20 So.3d 1166, 1184.

16

Considering the reasons given by the trial judge and the application of the *Smith* factors, we find Defendant's sentences are not excessive. This assignment of error also lacks merit.

## DISPOSITION

We amend the sentences imposed upon Defendant by the trial court to delete that portion of the sentences requiring participation in and completion of a GED program. Additionally, we instruct the trial court to make an entry in the minutes reflecting this amendment. In all other respects, Defendant's convictions and sentences are affirmed.

**CONVICTIONS AFFIRMED, SENTENCES AFFIRMED AS AMENDED, REMANDED WITH INSTRUCTIONS.**